T.C. Memo. 1997-376

UNITED STATES TAX COURT

HANNA AND ASSOCIATES, P.C.,
F.K.A. MARK J. HANNA, P.C., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9716-96.           Filed August 18, 1997.

Charles F. Daily, Jr., for petitioner.

Steven B. Bass, for respondent.

MEMORANDUM OPINION

WHALEN, Judge:  This case is before the Court to
decide respondent's Motion To Dismiss For Lack Of
Jurisdiction.  The issue for decision is whether petitioner
filed its petition within the time prescribed by section

6213(a).  Unless stated otherwise, all section references are to the Internal Revenue Code.

### Background

Petitioner is a corporation.  At the time the instant petition was filed, petitioner's principal place of business was in Austin, Texas.

Respondent issued a notice of deficiency determining a deficiency of $19,131 in petitioner's 1992 income tax, and an accuracy-related penalty pursuant to section 6662(a) of $3,826.

Respondent sent the notice of deficiency by certified mail to petitioner's last known address on February 8, 1996.  The 90-day period under section 6213(a) for timely filing a petition for redetermination in this Court expired on May 8, 1996.

After the notice of deficiency was mailed to petitioner, its president, Mr. Mark J. Hanna, conferred with its attorney, Charles F. Daily, Jr., about filing a petition for redetermination with this Court and about the substance of the petition.  Mr. Hanna was aware that the deadline for filing such a petition was May 8, 1996, and he met with Mr. Daily on May 7, 1996, to finalize the preparation of a petition for redetermination.

At that time, petitioner employed Ms. Denese D. Lindsay-Mosley as a legal assistant and office manager. Ms. Mosley had worked for petitioner in that capacity for approximately 6½ years. She was responsible for petitioner's outgoing mail and was the only person in petitioner's office who regularly used petitioner's private postage meter.

On May 7, 1996, Mr. Hanna instructed Ms. Mosley to type and mail the instant petition. Ms. Mosley was aware that the petition needed to be filed on or before May 8, 1996. Mr. Daily relied upon Ms. Mosley to type and mail the instant petition because he did not employ his own secretary. After the close of business on May 7, 1996, Ms. Mosley planned to be away from the office for approximately 3 weeks to marry and go on a honeymoon. During Ms. Mosley's absence from the office, from May 9, 1996, through May 24, 1996, petitioner employed a temporary secretary, Ms. Laura Sanders.

The instant petition was received by the Court, and was filed, on May 20, 1996, 102 days after the mailing of the notice of deficiency. It was received in an envelope postmarked "May 7, 1996" from Austin, Texas. The postmark was made by a private postage meter bearing the number 5048754, and not by the U.S. Postal Service. The petition

is dated May 7, 1996, and is signed by petitioner's attorney. The envelope in which the petition was received by the Court is not torn or damaged, and there are no markings indicating that additional postage was due or that the normal delivery of the envelope was delayed. The parties agree that the normal delivery time for a properly addressed envelope sent from Austin, Texas, to Washington, D.C., is 3 days.

On May 7, 1996, the mailboxes in petitioner's building were located in the basement. Sometime thereafter, the mailboxes were moved to a location down the hall from petitioner's office. While it is unclear from the record exactly when that move occurred, it is clear that the move had taken place by July 11, 1996, the date on which petitioner filed Petitioner's Response To Respondent's Motion To Dismiss, and the date of Ms. Mosley's affidavit attached thereto (Ms. Mosley's affidavit).

Over the years, petitioner has had several different postal meters, and each meter has had a different serial number. On May 7, 1996, petitioner was using a postal meter with the number 5048754. Sometime after May 28, 1996, the date Ms. Mosley returned from her vacation, a Pitney Bowes representative replaced petitioner's postal meter with one bearing the number 5037718.

On or about July 6, 1996, Mr. Hanna wrote the following letter to Mr. Steve Hanson, the mailing requests clerk at the main U.S. Post Office in Austin, Texas, inquiring whether petitioner's office had ever been notified about sending "'stale date' mailings":

> Dear Mr. Hanson:
>
>     If you will check your Austin Post Office computer record of notices sent relating to "stale date" mailings and certify that neither Mark J. Hanna, P.C. nor Hanna & Associates, P.C. have ever been mailed such a notice, I would appreciate it. Our Pitney-Bowes meter number is 5037718.
> Sincerely,
>
> Mark J. Hanna

In response, Mr. Hanson provided the following information:

> Post office personnel scan all metered mail which is collected in this fashion. Most such mail does not separately receive a postmark in our cancelling facility. However, when scanners detect metered mail which does not bear the current date on its meter, it is pulled and run through a cancelling machine to receive a cancel bearing the current date over its 'stale' meter date. If either a significant amount of stale date metered mail or any mail bearing a meter date several days old is detected, the sender may be contacted and asked to redate all such mail before it is remailed.
>
> *   *   *   *   *   *   *
>
> Upon the written request of Mr. Mark J. Hanna, who has held a Pitney Bowes postage meter number 5037718 and has sent mail labeled either Mark J.

Hanna, P.C. or Hanna and Associates, P.C. since 1990, I checked our computer and learned that no stale date notices have been recorded on that account.

## Discussion

The issue for decision is whether the instant petition was filed with the Court within 90 days after the notice of deficiency was mailed to petitioner, as required by section 6213(a). The petition was received by the Court on May 20, 1996, 102 days after the mailing of the notice of deficiency. The envelope in which the petition was received bears the postmark May 7, 1996, 89 days after the notice of deficiency was mailed to petitioner. The Court must decide whether the petition shall be deemed to be filed on the date of the postmark on the envelope, as permitted in certain circumstances by section 7502. The postmark on the envelope was not made by the U.S. Postal Service. It was made by petitioner's private postage meter.

If section 7502 applies, a document that is timely mailed is treated as timely filed. In order for section 7502 to apply, the document must be mailed in accordance with certain requirements set forth in the statute and regulations. See sec. 7502(a)(2), (b); sec. 301.7502-1(c), Proced. & Admin. Regs. For example, the document must be contained in a properly addressed envelope, with sufficient

postage prepaid.  See sec. 301.7502-1(c)(1), Proced. &

Admin. Regs.  There are additional rules regarding the

postmark on the envelope.  Sec. 301.7502-1(c)(1)(iii).  In

the case of a postmark made other than by the U.S. Postal

Service, section 301.7502-1(c)(1)(iii)(<u>b</u>), Proced. & Admin.

Regs., sets forth the following rules:

> (b) If the postmark on the envelope or wrapper
> is made other than by the United States Post
> Office, (1) the postmark so made must bear a
> date on or before the last date, or the last
> day of the period, prescribed for filing the
> document, and (2) the document must be received
> by the agency, officer, or office with which it
> is required to be filed not later than the time
> when a document contained in an envelope or other
> appropriate wrapper which is properly addressed
> and mailed and sent by the same class of mail
> would ordinarily be received if it were post-
> marked at the same point of origin by the United
> States Post Office on the last date, or the last
> day of the period prescribed for filing the
> document. However, in case the document is
> received after the time when a document so
> mailed and so postmarked by the United States
> Post Office would ordinarily be received, such
> document will be treated as having been received
> at the time when a document so mailed and so
> postmarked would ordinarily be received, if the
> person who is required to file the document
> establishes (i) that it was actually deposited in
> the mail before the last collection of the mail
> from the place of deposit which was postmarked
> (except for the metered mail) by the United
> States Post Office on or before the last date,
> or the last day of the period, prescribed for
> filing the document, (ii) that the delay in
> receiving the document was due to a delay in the
> transmission of the mail, and (iii) the cause of
> such delay.

As mentioned above, the instant petition was received by the Court on May 20, 1996, 13 days after petitioner alleges that it was mailed. The parties agree that the ordinary delivery time for a properly addressed envelope sent from Austin, Texas, to Washington, D.C., is 3 days. Accordingly, the petition was not received by the Court within the ordinary delivery time for mail sent from Austin, Texas, to Washington, D.C. Therefore, under section 301.7502-1(c)(1)(iii)(b), Proced. & Admin. Regs., quoted above, the petition will not be deemed filed on the postmark date, May 7, 1996, unless petitioner establishes: (1) That the petition was actually deposited in the mail before the last collection of the mail on May 8, 1996, the last day for filing the petition; (2) that the delay in receiving the petition was due to a delay in the transmission of the mail; and (3) the cause of the delay. Sec. 301.7502-1(c)(1)(iii)(b), Proced. & Admin. Regs.; see Gomez v. Commissioner, T.C. Memo. 1996-561; Little v. Commissioner, T.C. Memo. 1995-491.

We find that petitioner has failed to satisfy each of the three conditions of section 301.7502-1(c)(1)(iii) (b), Proced. & Admin. Regs. Petitioner has introduced no evidence to show that the delay in receiving the petition was due to a delay in the transmission of the mail, the

second condition, or to show the cause of the delay, the third condition. See Beacham v. Commissioner, T.C. Memo. 1996-226; Gomez v. Commissioner, supra. We note that the complete failure of proof on petitioner's part in regard to the delay in the transmission of the mail makes this case readily distinguishable on its facts from Rotenberry v. Commissioner, 847 F.2d 229 (5th Cir. 1988), revg. and remanding an unreported order of this Court, where the Commissioner conceded that the delay in delivering the taxpayer's petition to the Tax Court was occasioned by a delay in the transmission of the mail, and the Court of Appeals accepted the taxpayer's explanation of the cause of that delay. At the hearing on respondent's motion, petitioner's attorney conceded that petitioner did not have proof regarding these conditions of the regulations. The following discussion took place at the hearing:

> THE COURT: Let me just ask you a question, Mr. Daily. In your opening are you conceding that Petitioner cannot make the proof called for in regulation Section 301.7502-1(c)(iii)(b), in-asmuch as you do not claim to have proof to show that the delay in receiving the document was due to a delay in the transmission of the mail?
>
> And that the cause of -- and that you have no proof to show the cause of delay?

MR. DAILY:  That's correct, Your Honor.  And therefore, I would argue that that Section does not apply to us because of the interpretation of what postmark of the United States Post Office is.

Inasmuch as petitioner had no proof regarding the second and third conditions of section 301.7502-1(c)(iii)(b), Proced. & Admin. Regs., petitioner's attorney argued "that the marking on our envelope should, in fact, be considered a U.S. postmark because the U.S. Postal Service so considers it and their operations manual and the domestic mail manual are both consistent in that application."  We disagree.  We find that the postmark on the envelope in which the instant petition was mailed is a postmark "not made by the United States Postal Service".  Thus, it is subject to section 7502(b) and the regulations promulgated thereunder, quoted above.  The burden placed on taxpayers by those regulations may be a difficult one but that, by itself, does not permit us to find that the regulations are invalid, as suggested by petitioner.  The regulations were promulgated under the broad rule-making authority given to the Commissioner by section 7502(b).  They have been held valid by this and other courts, and nothing in petitioner's argument convinces us that the regulations are unreasonable or plainly inconsistent with

the statute. See <u>Lindemood v. Commissioner</u>, 566 F.2d 646, 649 (9th Cir. 1977), affg. per curiam T.C. Memo. 1975-195; <u>Fishman v. Commissioner</u>, 51 T.C. 869, 872 (1969), affd. per curiam 420 F.2d 491 (2d Cir. 1970).

Moreover, we find that petitioner has failed to prove the first condition imposed by the regulations, that the petition was deposited in the mail before the last collection of the mail on May 8, 1996, the last day of the period prescribed for filing. See sec. 301.7502-1(c)(1)(iii)(<u>b</u>), Proced. & Admin. Regs. To prove this condition of the regulations, petitioner relies entirely upon the testimony of Ms. Mosley. At the hearing, Ms. Mosley testified that she mailed the petition on May 7, 1996, by depositing it in the mailboxes located "in the basement of our building." However, Ms. Mosley's affidavit states that she mailed the petition by depositing it in a mailbox in our building "just down the hall from our office." Ms. Mosley's affidavit states as follows:

> There is a U.S. Post Office mail box in our building just down the hall from our office. After weighing the envelope containing the required copies of the Tax Court petition, I affixed the necessary metered postage and hand carried this envelope and our other outgoing mail to that box well before 5:00 p.m. (it has a 5:00 p.m. pickup daily) on May 7, 1996, just as I do every day before I leave the office at 5:00 p.m.

During the hearing, Ms. Mosley acknowledged this discrepancy and attempted to explain it in the following passage:

Q    And your affidavit indicates that it was prepared on the 7th and mailed on the 7th. Your affidavit goes further on and says that the mailing room, the mailing facilities in this building is down the hall from your office.

    And you mailed this petition down the hall. Is that what your petition says?

A    No.

Q    Or your affidavit?

A    No. It did not say that I mailed it down the hall. It said that there were mail boxes in our building just down the hall.

Q    Yes. And then you go on to say you mailed this petition in those mail boxes.

A    Correct.

Q    Referring to the one down the hall?

A    At the time I executed the affidavit they were located down the hall.

Q    Okay. And at the time that --

A    At the time that they -- that I mailed it they were downstairs in the basement.

Q    So today your testimony would be where did you mail this petition -- which Mr. Daily didn't ask. But if I asked you, Where did you mail this petition, it would be --

A    In the basement of our building.

Q    And that is different than the affidavit?

A    Well, not in my opinion, no.

Q    But the affidavit indicates that you mailed it in those mail boxes.

A    Can you read that and show me that -- where it says that?

            *   *   *   *   *   *   *

Q    What else does it say?  As to where the mailboxes are located?

A    Okay.  That's on page two.  "There is a U.S. Post Office mailbox in our building down the hall from our office."

Q    Uh-huh.  Could you go on?

A    "After weighing the envelope containing the required copies of the Tax Court petition, I fixed the necessary metered postage and hand carried this envelope and our other outgoing mail to that box well before 5:00 p.m."

Q    "That box."  Were you referring to the box down the hall?

A    I was referring to the box in our building -- because the boxes were not down the hall on May 7th.

In view of the above discrepancy in Ms. Mosley's statements regarding where the mailboxes were located at the time she allegedly deposited the envelope containing the petition in the mail, we are not convinced that the petition was deposited in the mail on or before May 8, 1996, as required by section 301.7502-1(c)(1)(iii)(b), Proced. & Admin. Regs. See Little v. Commissioner, T.C. Memo. 1995-491.

Because petitioner has not established that section 7502 applies, we cannot find that the petition was filed within the time required by section 6213(a) and, therefore, we shall grant respondent's motion to dismiss for lack of jurisdiction.

To reflect the foregoing,

<u>An appropriate order will be entered granting respondent's motion to dismiss</u>.